UNITED STATES *v.* BENZIGER BROS., INC. (No. 4639) [1]

[1] C. A. D. 449.

United States Court of Customs and Patent Appeals, February 27, 1951

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

*John D. Rode* for appellee.

[Oral argument December 7, 1950, by Mr. Weeks and Mr. Rode]

Before Garrett, Chief Judge, and Jackson, O'Connell, Johnson, and Worley, Associate Judges

Johnson, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, rendered in accordance with its decision, C. D. 1202 (24 Cust. Ct. —) sustaining two protest of appellee, and holding certain merchandise invoiced as "Cornely Embroidered Church Laces, all cotton" to be properly dutiable at 60 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified by the Trade Agreement with Switzerland, T. D. 48093 (69 Treas. Dec. 74).

The involved merchandise was imported from Switzerland in two shipments.

The merchandise covered by protest 143098–K was classified by the collector as "Articles embroidered, Cornely Machine embroidered cotton arts, not wearing apparel," and the merchandise covered by protest 143500–K was classified as "Cornlly [sic] Mach. embrd. articles of cotton 'Parts of church vestments'." The merchandise was invoiced as "Cornely Embroidered Church Laces, all cotton." The collector assessed duty on all the involved merchandise at the rate

of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930.

In each of the importer's protests it is claimed that the merchandise "is properly dutiable at only 60 per centum under paragraph 1529 and T. D. 48093 or at only 75 per centum under paragraph 1529 and T. D. 48316." That is to say the importer claims the merchandise is properly dutiable at 60 per centum under paragraph 1529 (a) as modified by the Trade Agreement with Switzerland under a provision for insertings, edgings, galloons, flouncings, and all-overs, and alternately that it is properly dutiable under the same paragraph as modified by the Trade Agreement with France under the provision for articles of wearing apparel, embroidered. At the argument of the case before us counsel for appellee contended that the merchandise was properly dutiable at 60 per centum ad valorem under paragraph 1529 (a), *supra*, as modified by the Trade Agreement with Switzerland, *supra*.

The pertinent portions of paragraph 1529 (a) *supra*, read as follows:

* * * and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; * * * and fabrics and articles embroidered * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, * * * 90 per centum ad valorem.

As modified by the Trade Agreement with Switzerland, *supra*:

* * * galloons, flouncings, * * * ; articles in chief value of one or more of the foregoing, except articles of wearing apparel not specified by name in this provision; * * * collars, cuffs, * * *; all the foregoing, finished or unfinished, however described and provided for in paragraph 1529 (a), which are embroidered or tamboured and which are wholly or in chief value of cotton * * * 60% ad val. *Provided*, That this provision shall not apply to laces, lace fabrics, and lace articles, made in any part on a lace machine, nor to articles or materials embroidered or tamboured in any part by hand or otherwise than with the use of multiple-needle, Cornely, or Bonnaz embroidery machines * * *

As modified by the Trade Agreement with France, *supra*:

Articles of wearing apparel, finished or unfinished, wholly or in chief value of cotton * * *, however provided for in paragraph 1529 (a), in whole or in part of machine-made lace, or embroidered * * * 75% ad val.

At the trial in the Customs Court it was agreed by counsel for the respective parties that the two protests "involve the same merchandise and the same issue" and they were consolidated.

Representative samples of the involved merchandise consisting of a piece of embroidered net, 3½ yards long and 38 inches wide, and two 18 by 10 inch pieces of the same material were introduced as evidence and marked Exhibit 1 and Collective Exhibit 2 respectively. As imported, Collective Exhibit 2 was temporarily stapled to Exhibit 1.

Certain pages of a catalogue of the importer, who is a manufacturer

of clerical garments, were also introduced as evidence and marked as Illustrative Exhibits 3, 4 and 5.

Herman Borneman was the only witness for the importer.

He testified that he has been employed by Benziger Bros., Inc., the importer herein, for ten years and is its Secretary; that Benziger Bros. are "Manufacturers and publishers of religious goods, text books, clerical garments"; that he is familiar with the merchandise here involved; that it is flouncing; that appellee has sold materials such as Exhibit 1 and Collective Exhibit 2 as flouncing; that appellee does not classify them as flouncing; that "in our advertising the trade name has been embroidered nets or laces"; that the importer uses Exhibit 1 and Collective Exhibit 2 for the making of albs, surplices and rochets; that there is sufficient yardage in Exhibit 1 to make any one of those three garments and it can also be used as an altar hanger; that Exhibit 1 and Collective Exhibit 2 are used to make surplices and that he has seen strips like Exhibit 1 converted into surplices.

He also testified that Exhibit 1 cannot be. made into a surplice because it does not have sufficient yardage; that Exhibit 1 can be used as a sleeve in a surplice but that it must be cut down for that purpose; that Collective Exhibit 2 is usually used to make the cuffs on albs and rochets and that it can be used as an insert in a garment; also, that Exhibit 1 and Collective Exhibit 2 were not imported with the idea that they would be cut up and sold by the yard and that all of appellee's sales of the merchandise was in its condition as imported and not cut into any pieces; that Collective Exhibit 2 is flouncing; that appellee uses it exclusively in the making of a cuff and that it is dedicated to that purpose but has to be cut to shape.

It will.be noted that he testified that both Exhibit 1 and Collective Exhibit 2 are flouncing; that Exhibit 1 is used to make surplices; that a surplice cannot be made from Exhibit 1; that appellee sold the materials such as the imported merchandise as flouncing; that appellee does not "classify them as flouncings" but "as nets and laces"; that Collective Exhibit 2 can be used for an insert but that appellee uses it exclusively in the making of a cuff and that it is dedicated to that purpose; that it has to be cut to shape when used to make a cuff.

Mr. Borneman also testified that Exhibit 1 came in sizes of 2¾ yards to 3½ yards in length; that the two pieces of Collective Exhibit 2 are intended to be utilized with Exhibit 1 when it is made up into some article; that the merchandise was embroidered to length as imported; that "they are embroidered to that length, the embroidery operation undoubtedly was done to those lengths"; that the merchandise came in eight different patterns and that they could not be used interchangeably.

The appellant introduced the testimony of two witnesses, Charles Bihler and Charles B. J. Molitor.

Mr. Bihler testified that he has been in the embroidery business for 65 years, is an embroidery manufacturer and operates five factories in New Jersey; that he is familiar with and has seen material such as Exhibit 1 made and that Exhibit 1 is not a flouncing; that it was made specifically for a certain purpose and that the embroidery terminates before the end of the lace; that flouncing is made in long lengths; that flouncing is gathered or ruffled to become a flounce; that it is the lower portion of a skirt, or that which is sewed on; that unless the material is gathered or ruffled it is not flouncing but may be a material for flouncing; that flouncing is a material used only for the purpose of flouncing.

Mr. Molitor testified that he has been sales manager of the North American Lace Company for 15 years and has been in the lace and embroidery business for 40 years; that he has made, bought and sold lace and embroidered articles; that Exhibit 1 is a part of an ecclesiastical garment; that "the Cornely embroidery work has stopped at a specific point and hasn't been continued on" and that "If it were yardage, that embroidery would continue on to the end of the net, as long as the net existed prior to its application"; that flouncing is made in running lengths, a continuous yardage limited by the extent of the capabilities of the machine upon which it is made ranging from 6½ yards to 50 or 60 yards; that in Exhibit 1 the net is first made and then it is embroidered; that it would not be called a running length but a completed length.

Judge Lawrence asked this witness "It is your opinion that that piece was fabricated with the idea that it would be used as one piece in the production of ecclesiastical garments?" The witness answered "To me, sir, it seems obvious; otherwise, the yardage would be considerably longer, because it is not practical to make merchandise of that type within the limitation of 3½ yards." To a further question the witness testified that flouncing is made in running lengths, a continuous yardage limited by the extent of the capabilities of the machine upon which it is made.

Webster's New International Dictionary, second edition, defines a flounce as "A strip gathered and sewed on by its upper edge, and left hanging, esp. around the skirt of a woman's dress."

The Dictionary of Tariff Information at page 430 contains the following:

Flouncing is textile material of any description used for making deep ruffles or flounces, usually gathered or pleated on one edge and loose at the other, the gathered edge being sewn to the garment.

The Summary of Tariff Information (1929) at page 2026 states as follows:

* * * Flouncing may be of lace or of embroidered material, and is used for making deep ruffles or flounces which are afterwards gathered or pleated at the edge which is sewn to the garment.

Appellee's witness Mr. Borneman defined a flounce as "The flounce can be, and usually is, a piece of over-all embroidered material, whether it be net or lawn, that can be purchased *in any desired length*, for use primarily as a skirt in some sort of garment." (Italics ours.)

Thus, according to the definition of Webster's New International Dictionary, second edition; of the Dictionary of Tariff Information; of the Summary of Tariff Information (1929); and even according to the definition of appellee's own witness, this material is not flouncing.

The issue here is not whether the merchandise *could* be used as flouncing but whether it is properly dutiable as flouncing or as embroidered lace. Practically all kinds of textile materials, or yard goods *could* be used as flouncing. Most flexible materials could be used for such purpose.

It is apparent that a flounce is made from flouncing material by making deep ruffles or flounces at one edge which is usually sewn to the garment.

We have examined appellee's Exhibits 3 and 4 which refer to albs and rochets. In neither the albs nor the rochets shown in those exhibits has the embroidered lace been ruffled or flounced.

The merchandise at bar was not invoiced as flouncing; was not entered as flouncing and there is no evidence that it was used as flouncing.

From the above testimony it is also clear that Collective Exhibit 2 is not cuffs. True it is material used in the making of cuffs. The testimony shows it can also be used for other purposes such as an insert in a garment. This testimony simply establishes that it is material for the manufacture of cuffs. Before the material in its imported condition becomes a cuff it must be shaped and sewed before it becomes a cuff. The testimony that it was dedicated to the purpose of making cuffs clearly establishes that it was not yet a cuff.

We think the imported merchandise of Exhibit 1 is not flouncing and that the merchandise of Collective Exhibit 2 is not cuffs. The merchandise of both Exhibits is Cornely machine embroidered articles of cotton as classified by the collector and we so hold.

Therefore the judgment of the trial court is *reversed*.

J. J. O'CONNELL and WORLEY dissent.